## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLE RAYWID & BRAVERMAN, LLP<br>1919 Pennsylvania Avenue, N.W., Suite 200<br>Washington, D.C. 20006<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>RONALD E. MASSIE<br>451 Mansfield Ave<br>Darien, CT 06820-2115<br>and<br>GLOBAL NETWORK COMMUNICATIONS,<br>INC.<br>1080 Leggett Avenue<br>Bronx, NY 10474<br><br>　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. _____ |

## COMPLAINT

Plaintiff Cole Raywid & Braverman, LLP ("CRB"), in complaint against Defendants Global Network Communications, Inc. ("Defendant Global") and Ronald E. Massie ("Defendant Massie") individually, and as alter ego of Defendant Global, state as follows:

1.　　　This is an action to recover fees and costs for legal services performed, billed, and unpaid, in which CRB seeks monetary relief in the form of payment of attorney's fees and costs incurred for legal services rendered pursuant to the validly executed Fee Agreement dated October 17, 2003 ("Fee Agreement," attached as Exhibit A hereto), and the validly executed Amended Fee Agreement dated December 14, 2004 ("Amended Fee Agreement," attached as Exhibit B hereto) between CRB and Defendant Global, both signed by Defendant Massie as sole

owner and Chief Executive Officer of Defendant Global. In addition, CRB seeks enforcement of the Continuing and Unconditional Guaranty signed and dated December 14, 2004 ("Guaranty," attached as Exhibit C hereto) entered into by CRB and Defendant Massie individually, personally guaranteeing payment for legal services rendered to Defendant Global by CRB.

## PARTIES

2.      Plaintiff CRB is a limited liability partnership duly organized and existing under the laws of the District of Columbia, with a principal place of business in Washington, D.C. Plaintiff CRB at all times provided legal services to Defendant Global by, or under the direct supervision of, attorneys licensed to practice in the District of Columbia.

3.      Defendant Global is a privately held corporation organized and incorporated in the State of New York with its principal place of business in the State of New York, wholly owned and controlled by Chief Executive Officer Defendant Massie.

4.      Defendant Massie, a resident of the State of Connecticut, is the owner of all the equity of Defendant Global and is also the sole personal guarantor pursuant to the Guaranty entered into by and between CRB and Defendant Massie.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1), in that CRB is a limited liability partnership organized and existing in the District of Columbia, while Defendant Global is a New York corporation with its principal place of business in New York, and Defendant Massie was at all times relevant to this Complaint and is currently a resident of the State of Connecticut, such that this suit is between citizens of different States, and the amount

in controversy under the Fee Agreement and Promissory Note exceeds $75,000 exclusive of interests and costs.

6.    Venue is proper under 28 U.S.C. § 1391(a)(2), because a substantial part of the events and omissions giving rise to the claim occurred in the District of Columbia, specifically, CRB's provision of legal services to Defendant Global, because the Fee Agreement and Amended Fee Agreement state that enforcement suits may be brought in courts located in the District of Columbia, and because the Guaranty states that enforcement suits may be brought in the courts of the United States of America and the District of Columbia (or the state of Connecticut). Fee Agreement at 1; Amended Fee Agreement at 3; Guaranty at 4.

## FACTS

7.    Defendant Global under the direction of Defendant Massie owns and manages payphones in New York City.

8.    Defendant Global retained CRB to represent it in an action against the City of New York ("City") regarding regulation of Defendant Global's Public Pay Telephone business within the City, and on October 17, 2003, executed a Fee Agreement memorializing the attorney-client relationship and formalizing the parties' business relationship. (Exh. A).    Defendant Massie signed the fee agreement as Chief Executive Officer of Defendant Global.

9.    Under the Fee Agreement, Defendant Global agreed "to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on its behalf." Fee Agreement at 1. Defendant Global further agreed in the Fee Agreement that it would "be liable for all expenses reasonably incurred by CRB in representing it," including "some or all of the following:  filing fees, copying charges, telephone charges, local counsel fees, travel charges,

secretarial overtime, computerized legal research, messenger fees, and other incidental expenses." Fee Agreement at 1.

10.     Defendant Global further agreed in the Fee Agreement that "[s]hould [Defendant Global] not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to institute collection procedures, including the retaining of attorneys and/or commencement of an action in court to collect such sums, [Defendant Global] agrees to pay all costs and attorneys fees incurred incident to such collection efforts." Fee Agreement at 1.

11.     CRB engaged in extensive legal work between September and December of 2003, including drafting on behalf of Defendant Global a Complaint against the City of New York ("City) regarding the City's regulation of Defendant Global's Public Pay Telephone business in the United States District Court for the Southern District of New York ("New York Litigation"); drafting a Motion for a Preliminary Injunction and Brief in Support of the Motion; attending hearings on the Motion; and engaging in settlement discussions with the City.

12.     Defendants Global and Massie, however, failed to pay outstanding balances to CRB. CRB and Defendant Massie, on behalf of Defendant Global, agreed in December 2003 to resolve outstanding debts owed to CRB for services through November 2003 as follows:  Global would pay CRB $39,000 in addition to all funds Global had already provided to CRB (including funds in escrow).

13.     In or about January 2004, CRB received checks totaling $39,000 from Defendant Massie, such that outstanding debts owed for legal services as of November 2003 were resolved.

14.     Following this resolution, CRB continued to provide legal services to Defendant Massie and Defendant Global, and Defendants Massie and Global made some payments to CRB.

4

But Defendants Massie and Global again fell substantially into arrears. Roughly a year later, by December of 2004, Defendants Massie and Global owed over $50,000 to CRB.

15.    Due to Defendants' indebtedness to CRB, CRB requested, and Defendant Massie provided, the Guaranty, which Defendant Massie signed December 14, 2004. (Exh. C).

16.    The Guaranty states, among other things, that Defendant Massie "absolutely and unconditionally guarantees and promises to pay to CRB or to its order, on demand, any and all indebtedness of Global owed to and in favor of CRB, and absolutely and unconditionally guarantees the fulfillment of all obligations of Global pursuant to the [Amended] Fee Agreement or any documents or instruments entered into in connection therewith, as determined judicially or in a confirmed arbitration award, if Global elects arbitration." Guaranty at 1.

17.    On the same day, CRB and Defendant Global entered into the Amended Fee Agreement. (Exh. B). Defendant Massie signed the Amended Fee Agreement as Chief Executive Officer of Defendant Global.

18.    Nothing in the Amended Fee Agreement absolves Defendants Global and Massie of their indebtedness to CRB under the original Fee Agreement.

19.    Defendant Global agreed in the Amended Fee Agreement "to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on its behalf." Amended Fee Agreement at 1.

20.    Defendant Global further agreed in the Amended Fee Agreement, "[b]eginning in January 2005, and on or before the 15th day of each month thereafter … [to] pay CRB the sum of at least fifteen thousand dollars ($15,000.00) as payment for legal expenses incurred or to be incurred during the course of the [New York Litigation] … CRB will render monthly invoices for legal services and expenses, which may or may not exceed the Monthly Payment in any

given month." Amended Fee Agreement at 2. This arrangement was "an attempt to allow [Global] and CRB to accommodate [Global's] desire to pay for the Litigation within a generally fixed monthly budget, although CRB's fees and expenses are expected to vary from month to month, sometimes significantly." Amended Fee Agreement at 2. This monthly payment arrangement did not remove Defendant Massie and Defendant Global's ultimate obligation to pay for fees incurred "on an hourly basis, at [CRB's] then prevailing standard hourly rates," and Defendant Massie and Defendant Global remained indebted for all of CRB's fees and expenses. Fee Agreement at 1. Any payments in excess of fees and expenses would be offset "against future monthly invoices." Fee Agreement at 2.

21.     Defendant Global further agreed in the Amended Fee Agreement to "be liable for all expenses reasonably incurred by CRB in representing it. These expenses may include some or all of the following: filing fees, copying charges, telephone charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental expenses." Amended Fee Agreement at 2.

22.     Defendant Global further agreed in the Amended Fee Agreement that should it "not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to institute collection procedures, including the retaining of attorneys and/or commence-ment of an action in court to collect such sums," Defendant Global would "pay all costs and attorneys fees incurred incident to such collection efforts." Amended Fee Agreement at 3.

23.     From the signing of the Amended Fee Agreement in December 2004 to 2007, CRB performed extensive legal work for Defendant Massie. Such legal work included: filing an extensive opposition to the City's motion to dismiss; filing an emergency motion and memorandum of law requesting the District Court to stay its order dismissing the complaint;

appearing before the District Court and arguing in support of a stay; successfully obtaining a stay pending appeal from the United States Court of Appeals for the Second Circuit; and appealing the District Court's dismissal of the complaint to the Second Circuit, which, after oral argument by CRB, reversed the dismissal of the complaint and remanded the case to the District Court for further proceedings.

24.     After signing the Amended Fee Agreement and Guaranty, Defendants Global and Massie provided limited payments to CRB, including a $12,000 payment posted December 22, 2004, and a $15,000 payment posted January 13, 2005. But between January 13, 2005 and the present, CRB received from Defendants Global and Massie a sole payment of $5,000 on February 17, 2006.

25.     Global and Massie have also provided checks on which Massie has stopped payment before they could be deposited by CRB and a check that was returned for non-sufficient funds.

26.     CRB used Counsel Press, Inc. ("Counsel Press"), a printer, to prepare and file appellate briefs and a joint appendix on behalf of Defendant Global in the Second Circuit.

27.     Under the Fee Agreement and Amended Fee Agreement, Defendants Massie and Global were obligated to pay all expenses reasonably incurred by CRB in the representation. Fee Agreement at 1; Amended Fee Agreement at 2.

28.     CRB requested that Defendants Massie and Global pay Counsel Press directly for printing costs in advance of the printing services. Defendant Massie advised CRB that he would pay the printer fees directly himself and informed CRB that he spoke with Counsel Press' representative to make arrangements for the payment.

29.     Neither Defendant Global nor Defendant Massie ever paid Counsel Press for its services, and Counsel Press eventually sued CRB in the Civil Court for the City of New York ("Counsel Press Litigation").  CRB entered into a settlement agreement (attached as Exhibit D hereto) in December 2006 and paid $6,000 to settle Defendant Global's debt to Counsel Press.

30.     The Counsel Press Litigation caused CRB to incur legal fees both through the work of its own attorneys and for fees paid to Ingram Yuzek Carroll, local counsel in New York.

31.     In addition to the Fee Agreement, Amended Fee Agreement, and Guaranty, Defendants Massie and Global have made numerous promises to pay CRB its legal fees, including a June 15, 2005 email stating that he would "update agreed upon fees as usual" (attached as Exhibit E hereto); a July 5, 2006 email promising a payment schedule (attached as Exhibit F hereto); and a July 6, 2006 email promising to pay the balance due, beginning with a $75,000 payment on September 8, 2006 (attached as Exhibit G hereto).  Neither these payments, nor any other further payment since February 2006, has been made by Defendant Massie or Defendant Global.

32.     CRB has demanded payment repeatedly from Defendant Massie and Defendant Global, and while Defendant Massie has made assurances that the outstanding balance would be paid, CRB's efforts have been fruitless.

33.     On January 8, 2007, the United States District Court for the Southern District of New York granted CRB's motion to withdraw as counsel.

34.     Under the terms of the Fee Agreement, Amended Fee Agreement, and Guaranty Defendant Global may elect binding arbitration of collection matters.  However, Defendant Massie failed to respond to repeated emails inviting him to elect arbitration should he wish to do so, including a September 13, 2007 email (attached as Exhibit H hereto) stating that if Defendant

Massie did not respond in writing "we will conclude that binding arbitration is not acceptable to you."

35.    As a result of Defendant Global's and Defendant Massie's continued failure to make good on the promises to pay and because the amount outstanding is excessive and has been outstanding for so long, after attempting to work out payment options and accommodations with Defendant Global and Defendant Massie throughout the course of over three years of representation and after the conclusion thereof, CRB has finally been forced to file this suit to recover legal fees and costs owed.

36.    Defendants Massie and Global are indebted to Plaintiff CRB for approximately $300,000, consisting of fees, expenses (including fees and expenses related to the Counsel Press litigation), and interest.

## Count I

### (Contract – Fee Agreements)

37.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.    Plaintiff was engaged by Defendants Global and Massie under contract, specifically, the Fee Agreement and Amended Fee Agreement, whereby Plaintiff provided legal services and representation to Defendant Global.

39.    The terms of the Fee Agreement and Amended Fee Agreement provide for Plaintiff to be paid at its prevailing hourly rates for services rendered.    Fee Agreement at 1; Amended Fee Agreement at 1.

40.    The Fee Agreement and Amended Fee Agreement further provide that upon Plaintiff's institution of collection processes for non-payment of fees billed, Defendant Global

agrees to pay all costs and attorney's fees incurred incident to such collection process. Fee Agreement at 1; Amended Fee Agreement at 3.

41.     Plaintiff rendered valuable legal services under the terms of the Fee Agreement and Amended Fee Agreement from 2003 to 2007.

42.     At all times Plaintiff provided Defendant Global with timely billing notices.

43.     Before instituting this proceeding, Plaintiff made numerous demands on Defendants Global and Massie to pay outstanding bills for fees earned and costs incurred, and Plaintiff was given numerous assurances that payment would be made.

44.     Nonetheless, payment has not been forthcoming, and Defendants Global and Massie have breached the terms of the Fee Agreement by failure to pay outstanding bills for fees earned and costs incurred.

45.     Defendants Global and Massie have outstanding bills and invoices, including interest, in the amount of approximately $300,000, exclusive of the costs of this action.

## Count II

## (Contract – Guaranty)

46.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 45, inclusive, as though fully set forth herein.

47.     Defendant Massie executed the Continuing and Unconditional Guaranty providing the promise to pay to CRB or to its order all indebtedness of Defendant Global owed to and in favor of CRB, and containing Defendant Massie's personal guarantee to satisfy any and all obligations of Defendant Global to CRB.

48.     The Guaranty provides specifically for Defendant Massie's guarantee and promise to pay all indebtedness owed to CRB and further guarantees all payments due to CRB from Defendant Global pursuant to the Amended Fee Agreement.  Guaranty at 1.

49.     The Guaranty is a bargained for, validly executed, enforceable contract to be governed by the laws of the District of Columbia.

50.     Defendant Massie is now personally liable and responsible for payment of bills which remain unpaid by Defendant Global.

51.     Plaintiff CRB has made demand for payment on Defendant Massie for outstanding bills due and owing to CRB.

52.     Defendant Massie has not paid outstanding bills due by Defendant Global and has thus breached the Guaranty Agreement.

53.     Plaintiff CRB is entitled to a judgment to collect on Defendant Global's bills outstanding in the amount of approximately $300,000, representing unpaid fees earned and costs incurred by Plaintiff CRB in its representation of Global, exclusive of costs of the present action.

**Count III**

**(Unjust Enrichment)**

54.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 53, inclusive, as though fully set forth herein.

55.     From 2003 to 2007, CRB provided legal services to Global under the Fee Agreement, Amended Fee Agreement, and Guaranty.

56.     Defendants Global and Massie knowingly accepted such services and enjoyed the benefit from them.

11

57.    The legal services rendered, including the fees for labor and the charges CRB expended, minus amounts previously paid, are reasonably worth the sum of approximately $270,000, excluding interest.

58.    Defendants Global and Massie have not paid this amount due to CRB

59.    It would unjustly enrich Global and/or Massie to allow them to retain the benefits of the services provided by CRB without compensation.

### Count IV

### (Money Due on Account)

60.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 59, inclusive, as though fully set forth herein.

61.    Defendants Global and Massie are liable to CRB on a running account in an amount exceeding $300,000, exclusive of the costs of this action.

### Count V

### (Fees and Costs)

62.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 61, inclusive, as though fully set forth herein.

63.    CRB has incurred attorney's fees and costs incident to collection efforts and will continue to incur such fees and costs during the prosecution of this action.

64.    Under the Fee Agreement and Amended Fee Agreement, Defendant Global is required to pay all costs and attorney's fees incurred incident to collection efforts. Fee Agreement at 1; Amended Fee Agreement at 3.

65.    Under the Guaranty, Defendant Massie guarantees and is liable for all obligations and indebtedness of Defendant Global.

66.    Defendants Massie and Global are liable for all attorney's fees and costs incident to collection efforts, including the prosecution of this action.

## RELIEF

WHEREFORE, for the reasons stated above, Plaintiff Cole Raywid & Braverman LLP, respectfully requests that the Court enter judgment in its favor and against Defendant Ronald Massie individually and/or Global Network Communications, Inc., and grant CRB monetary relief in the amount of approximately $300,000 for amounts due outstanding, together with reasonable attorneys fees and costs incurred in bringing this action, and post-judgment interest and for whatever other relief this Court deems just and proper.

Dated this 18th day of January, 2008.

Respectfully submitted,

DAVIS WRIGHT TREMAINE L.L.P.

Ronald G. London – DC Bar No. 456284
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006
(202) 973-4200

ATTORNEY FOR PLAINTIFF

Address of Plaintiff:

Cole Raywid & Braverman, LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Cole Raywid & Braverman, LLP | Ronald E. Massie<br>Global Network Communications, Inc. |
| | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY) |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001<br>(EXCEPT IN U.S. PLAINTIFF CASES) | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Ronald G. London<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave., NW, Ste. 200<br>Washington, DC  20006 | ATTORNEYS (IF KNOWN) |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
● 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ● 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ● 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* | | |
|---|---|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act | |

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
This is a diversity action under 28 U.S.C. § 1332(a)(1) for breach of contract of money due on account.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ approx. $300,000 + fees/costs   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE   1/18/08     SIGNATURE OF ATTORNEY OF RECORD   _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT A

# COLE, RAYWID & BRAVERMAN, L.L.P.

### FEE AGREEMENT WITH GLOBAL NETWORK COMMUNICATIONS, INC.

I. *AGREEMENT TO RETAIN CRB*: GLOBAL NETWORK COMMUNICATIONS, INC., a New York corporation wholly owned by Ronald J. Massie as of September 16, 2003 ("GNCI"), hereby retains and employs the law firm of COLE, RAYWID & BRAVERMAN, L.L.P. ("CRB") as its attorneys at law with power of attorney to represent it in litigation and related representation against the City of New York, New York ("City"), regarding the City's regulation of GNCI's Public Pay Telephone ("PPT") business within the City (the "Litigation"), to take all actions necessary in connection therewith, including the defense, prosecution, compromise or settlement of the claims and defenses in the Litigation on GNCI's behalf, should any such action prove necessary at any time. CRB's representation of GNCI may also include general legal advice, negotiations, administrative proceedings, the possible settlement or compromise of claims, in connection with the Litigation and such other matters as GNCI may direct.

II. *FEES*: In consideration of the legal services provided by CRB, GNCI agrees to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on its behalf.

III. *EXPENSES*: GNCI will be liable for all expenses reasonably incurred by CRB in representing it. These expenses may include some or all of the following: filing fees, copying charges, telephone charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental expenses.

IV. *BILLING & PAYMENT; SERVICE CHARGE*:

A. GNCI understands that, given the nature of the Litigation and the potential for GNCI to incur significant fees in any given month, timely payment of invoices from CRB is essential to the maintenance of the attorney-client relationship. CRB will render monthly invoices for legal services and expenses. Within seven (7) business days from receipt of each invoice, GNCI shall pay CRB in full via overnight mail or wire transfer. In the event that GNCI fails to pay CRB as required by this Agreement, then CRB may discontinue performing legal services for GNCI, and may withdraw from representation of GNCI, so long as such termination and withdrawal is otherwise consistent with CRB's ethical and legal obligations to GNCI.

V. *COLLECTION; ATTORNEY FEES*: Should GNCI not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to institute collection procedures, including the retaining of attorneys and/or commencement of an action in court to collect such sums, GNCI agrees to pay all costs and attorneys fees incurred incident to ~~GNCI also agrees that any such action may be brought in any of the~~

payment of fees, GNCI may elect to resolve the matter through arbitration, which shall be binding on the parties, under the rules of the American Arbitration Association.

VII. *RETAINER*: GNCI agrees to pay CRB as a retainer, the sum of fifty thousand dollars ($50,000.00) as follows: twenty-five thousand dollars ($25,000) on or before September 26, 2003, and twenty-five thousand dollars ($25,000) on or before October 31, 2003. Such sum shall be maintained in the firm's escrow account, and shall be held as a reserve to be applied against any amounts due and owing from GNCI to CRB. CRB may apply any or all of this retainer to amounts due and owing from GNCI at any time, but the parties understand that this retainer is a reserve, and shall not relieve GNCI of its obligation to pay monthly prepayments and payments as otherwise required under this Agreement. GNCI's retainer shall be held by CRB in an interest-bearing account, and CRB shall refund the entire retainer to GNCI, less any amounts owed to CRB, plus all interest earned in escrow, upon the earlier of the completion of the Litigation or CRB's withdrawal from representation of GNCI.

VIII. *CONFLICT WAIVER*: CRB currently represents AT&T Corp. and other existing

**I.**   *AGREEMENT TO RETAIN CRB:*  GLOBAL NETWORK COMMUNICATIONS, INC., a New York corporation wholly owned by Ronald J. Massie as of September 16, 2003 ("GNCI"), hereby retains and employs the law firm of COLE, RAYWID & BRAVERMAN, L.L.P. ("CRB") as its attorneys at law with power of attorney to represent it in litigation and related representation against the City of New York, New York ("City"), regarding the City's regulation of GNCI's Public Pay Telephone ("PPT") business within the City (the "Litigation"), to take all actions necessary in connection therewith, including the defense, prosecution, compromise or settlement of the claims and defenses in the Litigation on GNCI's behalf, should any such action prove necessary at any time.  CRB's representation of GNCI may also include general legal advice, negotiations, administrative proceedings, the possible settlement or compromise of claims, in connection with the Litigation and such other matters as GNCI may direct.

**II.**   *FEES:*  In consideration of the legal services provided by CRB, GNCI agrees to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on its behalf.

**III.**   *EXPENSES:*  GNCI will be liable for all expenses reasonably incurred by CRB in representing it.  These expenses may include some or all of the following: filing fees, copying charges, telephone charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental expenses.

**IV.**   *BILLING & PAYMENT; SERVICE CHARGE:*

**A.**   GNCI understands that, given the nature of the Litigation and the potential for GNCI to incur significant fees in any given month, timely payment of invoices from CRB is essential to the maintenance of the attorney-client relationship.  CRB will render monthly invoices for legal services and expenses.  Within seven (7) business days from receipt of each invoice, GNCI shall pay CRB in full via overnight mail or wire transfer.  In the event that GNCI fails to pay CRB as required by this Agreement, then CRB may discontinue performing legal services for GNCI, and may withdraw from representation of GNCI, so long as such termination and withdrawal is otherwise consistent with CRB's ethical and legal obligations to GNCI.

**V.**   *COLLECTION; ATTORNEY FEES:*  Should GNCI not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to institute collection procedures, including the retaining of attorneys and/or commencement of an action in court to collect such sums, GNCI agrees to pay all costs and attorneys fees incurred incident to such collection efforts.  GNCI also agrees that any such action may be brought in any of the Courts located in the District of Columbia.  Provided, however, that in any dispute regarding

payment of fees, GNCI may elect to resolve the matter through arbitration, which shall be binding on the parties, under the rules of the American Arbitration Association.

**VII.    RETAINER:**  GNCI agrees to pay CRB as a retainer, the sum of fifty thousand dollars ($50,000.00) as follows:  twenty-five thousand dollars ($25,000) on or before September 26, 2003, and twenty-five thousand dollars ($25,000) on or before October 31, 2003.  Such sum shall be maintained in the firm's escrow account, and shall be held as a reserve to be applied against any amounts due and owing from GNCI to CRB.  CRB may apply any or all of this retainer to amounts due and owing from GNCI at any time, but the parties understand that this retainer is a reserve, and shall not relieve GNCI of its obligation to pay monthly prepayments and payments as otherwise required under this Agreement.  GNCI's retainer shall be held by CRB in an interest-bearing account, and CRB shall refund the entire retainer to GNCI, less any amounts owed to CRB, plus all interest earned in escrow, upon the earlier of the completion of the Litigation or CRB's withdrawal from representation of GNCI.

**VIII.    CONFLICT WAIVER:**  CRB currently represents AT&T Corp. and other existing telecommunications clients who have, or may have, positions, disputes or claims which may be considered adverse to GNCI with respect to matters other than the Litigation (such as payments from any of these other clients to GNCI for long distance calls).  By executing this Agreement, GNCI expressly agrees and consents to the waiver of any and all actual or apparent, existing or future, conflicts of interest that might arise by CRB representing existing or future clients in litigation, regulatory proceedings or negotiations involving or adverse to GNCI.  In the event such a conflict arises, CRB may withdraw from representation of GNCI in a manner that is consistent with its ethical obligations, or GNCI may terminate CRB's representation.  Ethical rules require that CRB disclose this potential conflict to GNCI in writing, and we encourage you to consult with counsel prior to executing this Agreement.


*Global Network Communications, Inc.*


DATED:  _Oct 17, 2003_            By:  _____

Ronald E. Massie
Chief Executive Officer

# EXHIBIT B

# COLE, RAYWID & BRAVERMAN, L.L.P.

## AMENDED FEE AGREEMENT WITH GLOBAL NETWORK COMMUNICATIONS, INC.

I.    *AGREEMENT TO RETAIN CRB*:  GLOBAL NETWORK COMMUNICATIONS, INC., a New York corporation wholly owned by Ronald E. Massie as of November *14*, 2004 ("GNCI"), hereby amends its prior existing agreement to retain and employ the law firm of COLE, RAYWID & BRAVERMAN, L.L.P. ("CRB") as its attorneys at law with power of attorney to represent it in litigation and related representation against the City of New York, New York ("City"), regarding the City's regulation of GNCI's Public Pay Telephone ("PPT") business within the City (the "Litigation"), to take all actions necessary in connection therewith, including the defense, prosecution, compromise or settlement of the claims and defenses in the Litigation on GNCI's behalf, should any such action prove necessary at any time. CRB's representation of GNCI may also include general legal advice, negotiations, administrative proceedings, the possible settlement or compromise of claims, in connection with the Litigation and such other matters as GNCI may direct.

II.    *FEES*:  In consideration of the legal services provided by CRB, GNCI agrees to pay CRB on an hourly basis, at its then prevailing standard hourly rates, for all services rendered on its behalf.  Notwithstanding this agreement by GNCI to pay CRB's hourly fees, CRB agrees that it will not exceed the maximum amount show for each of the following tasks unless it first consults with GNCI:

- Opposition to Motion to Dismiss:  The City has filed a Motion to Dismiss GNCI's Amended Complaint.  CRB agrees to prepare and file an opposition to such Motion to Dismiss, and argue such Motion, for an amount not to exceed $30,000 in fees, exclusive of expenses (such as copying, postage, couriers, transportation, etc.).

- Motion for Partial Summary Judgment:  GNCI anticipates filing a motion for summary judgment (including a memorandum of points and authorities, a statement of material facts as to which there is no genuine issue for trial, and any associated affidavits or exhibits) either as part of its opposition to the City's Motion to Dismiss (mentioned above) or, if necessary, as a separate motion.  CRB agrees to prepare, file and argue this motion (and associated documentation) for an amount not to exceed $45,000 in fees, exclusive of expenses (such as copying, postage, couriers, transportation, etc.).

- Included in the above two tasks is CRB's assistance in preparing a legal response to the NOvember 1, 2004 recommendation of the staff of the City of New York Department of Information Technology and Telecommunications not to award a public pay telephone franchise to GNCI.

- The parties recognize that these tasks may be performed for less than the maximum fees listed above, and CRB will endeavor to complete these services for less than the maximum

Page 1 of 4

amount listed, to the extent it is able to do so consistent with its obligation to zealously represent GNCI in the Litigation. The parties also recognize that CRB will endeavor to keep track of the fees as they are billed in order to alert GNCI to any potential fees that will exceed the estimated amounts, and discuss the potential costs of further work on the matter.

**III.    EXPENSES**: GNCI will be liable for all expenses reasonably incurred by CRB in representing it. These expenses may include some or all of the following: filing fees, copying charges, telephone charges, local counsel fees, travel charges, secretarial overtime, computerized legal research, messenger fees, and other incidental expenses.

**IV.    BILLING & PAYMENT; SERVICE CHARGE**:

A.    GNCI understands that, given the nature of the Litigation and the potential for GNCI to incur significant fees in any given month, timely payment of invoices from CRB is essential to the maintenance of the attorney-client relationship.

B.    Beginning in January 2005, and on or before the 15th day of each month thereafter, GNCI will pay CRB the sum of at least fifteen thousand dollars ($15,000.00) as payment for legal expenses incurred or to be incurred during the course of the Litigation ("Monthly Payment"). CRB will render monthly invoices for legal services and expenses, which may or may not exceed the Monthly Payment in any given month. The parties will review the monthly invoices together to agree as to the reasonableness of fees. GNCI and CRB understand that any Monthly Payment(s) in excess of CRB's monthly invoices is/are to be credited to GNCI's account and that CRB will offset any such credits against future monthly invoices in the sequence that they are issued. The parties also acknowledge that this payment arrangement is an attempt to allow GNCI and CRB to accommodate GNCI's desire to pay for the Litigation within a generally fixed monthly budget, although CRB's fees and expenses are expected to vary from month to month, sometimes significantly. Because this payment arrangement is novel, either CRB or Global may terminate this form of payment upon request and upon the establishment of an alternative form of billing and/or payment that is mutually acceptable. If, at the termination of the Litigation or at any other time that the parties discontinue this form of payment, GNCI shall pay CRB all outstanding balances, and/or CRB shall return any Monthly Payment(s) credited to GNCI's account but unused.

C.    In the event that GNCI fails to pay CRB all fees and expenses incurred on GNCI's behalf, as required by this Agreement, then CRB may discontinue performing legal services for GNCI, and may withdraw from representation of GNCI, so long as such termination and withdrawal is otherwise consistent with CRB's ethical and legal obligations to GNCI.

**V.    RETAINER.** GNCI agrees to pay to CRB, as a retainer, the sum of fifteen thousand dollars ($15,000), such sum to be paid on or before December 10, 2004. Such sum shall be maintained in the firm's escrow account, and shall be held as a reserve to offset any unpaid charges upon the completion of CRB's representation of GNCI.

Fee Agreement Global Network Connections Inc  w_retainer (2).DOC

### VI.   SUCCESS FEE:

A.   GNCI and CRB agree that GNCI shall pay CRB success fee payments if CRB successfully obtains for GNCI the right to operate its public pay telephone business on the sidewalks of New York City ("Operational Rights").

B.   This payment becomes due only after time for any and all appeals has expired, and applies whether the GNCI's Operations Rights result from a decision of the courts or settlement of the case.

C.   This success fee shall not be due if CRB discontinues representation of GNCI at any time before GNCI obtains Operational Rights, regardless of CRB's contribution to the ultimate success of the matter.

D.   The success fee payable under this provision shall be negotiated by the parties on or before January 1, 2005, taking into account: (i) the value to GNCI of success in the Litigation, defined as GNCI (or a successor to Global's interest) obtaining the ability to continue to own and operate public pay telephones on the sidewalks and other public rights-of-way of the City of New York; (ii) the efforts of CRB in obtaining success in the Litigation (whether through court order or settlement); and (iii) the ability of GNCI to pay such a success fee based on increased revenue resulting from success in the Litigation. The success fee may be either a lump sum payment, a series of payments, or any other combination of payments that the parties mutually agree upon.

### VII.   COLLECTION; ATTORNEY FEES:

Should GNCI not promptly pay any amounts due under this Agreement, and should it become necessary for CRB to institute collection procedures, including the retaining of attorneys and/or commencement of an action in court to collect such sums, GNCI agrees to pay all costs and attorneys fees incurred incident to such collection efforts. GNCI also agrees that any such action may be brought in any of the Courts located in the District of Columbia. Provided, however, that in any dispute regarding payment of fees, GNCI may elect to resolve the matter through arbitration, which shall be binding on the parties, under the rules of the American Arbitration Association.

### VIII.   CONFLICT WAIVER:

CRB currently represents AT&T Corp. and other existing telecommunications clients who have, or may have, positions, disputes or claims which may be considered adverse to GNCI with respect to matters other than the Litigation (such as payments from any of these other clients to GNCI for long distance calls). By executing this Agreement, GNCI expressly agrees and consents to the waiver of any and all actual or apparent, existing or future, conflicts of interest that might arise by CRB representing existing or future clients in litigation, regulatory proceedings or negotiations involving or adverse to GNCI. In the event such a conflict arises, CRB may withdraw from representation of GNCI in a manner that is consistent with its ethical obligations, or GNCI may terminate CRB's representation. Ethical rules require that CRB disclose this potential conflict to GNCI in writing, and we encourage you to consult with counsel prior to executing this Agreement.

*Global Network Communications, Inc.*

Page 3 of 4

DATED: 12/14/07          By: _____
                              Ronald E. Massie
                              Chief Executive Officer

Fee Agreement Global Network Connections Inc w_retainer (2)

# Exhibit C

## CONTINUING AND UNCONDITIONAL GUARANTY

THIS CONTINUING AND UNCONDITIONAL GUARANTY (this "Guaranty") is made as of Dec. 14, 2004 by RONALD E. MASSIE ("Guarantor"), for the benefit of COLE, RAYWID & BRAVERMAN, LLP ("CRB"), a Washington, DC Limited Liability Partnership.

WHEREAS, CRB and Global Network Communications, Inc. ("Global") are parties to a Fee Agreement of even date herewith (the "Fee Agreement"), pursuant to which CRB is providing ongoing legal services to Global in connection with a dispute between Global and the City of New York;

WHEREAS, Guarantor currently owns all of the issued and outstanding capital stock of Global and will be benefited by the Agreement and performance of legal services by CRB;

WHEREAS, as a condition of its willingness to enter into the Agreement, CRB have requested that Guarantor enter into this Guaranty;

NOW, THEREFORE, in consideration of the foregoing, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1. GUARANTY

Guarantor absolutely and unconditionally guarantees and promises to pay to CRB or to its order, on demand, any and all indebtedness of Global owed to and in favor of CRB, and absolutely and unconditionally guarantees the fulfillment of all obligations of Global pursuant to the Fee Agreement or any documents or instruments entered into in connection therewith, as determined judicially or in a confirmed arbitration award, if Global elects arbitration. The obligations of Guarantor hereunder shall remain at all times undiminished, unreleased, and undischarged to any extent until payment in full of all indebtedness of Global to CRB.

2. INDEBTEDNESS AND OBLIGATIONS

Guarantor understands and agrees that the terms "indebtedness" and "obligations" as used in this Guaranty are used in their most comprehensive senses, and do not refer solely to the evidences of such indebtedness. Guarantor guarantees and promises to pay any and all indebtedness and to satisfy any and all obligations of Global, with interest on said indebtedness or obligations according to the terms of the respective indebtedness or obligations or according to law.

- 1 -

FINAL Massie Personal Guaranty (5).DOC

3.    RELIANCE ON GUARANTY

Guarantor understands and agrees that CRB is entering into the Fee Agreement in reliance upon this Guaranty.  Guarantor acknowledges that the entry by CRB into the Fee Agreement has or will result in a receipt by Guarantor of value that is in excess of, or equivalent to, the value bestowed upon CRB by virtue of this Guaranty.

4.    TERMINATION

This Guaranty will be terminated only upon Global's complete satisfaction of its obligations under the Fee Agreement.  The bankruptcy or other reorganization or liquidation of Global shall not relieve Guarantor of Guarantor's obligations hereunder.

5.    WAIVERS

Guarantor expressly waives any right or claim of right: (a) to notice of acceptance of this Guaranty; (b) to any notice of the creation, renewal, extension, or accruals of any of the indebtedness or obligations of Global, present or future; (c) to any notice of default or nonpayment and notice of dishonor to or upon Guarantor; Global or any other party liable for any of the obligations of Global; (d) to all other notices to which Guarantor might otherwise be entitled in connection with this Guaranty of any indebtedness or obligations hereby guaranteed.

6.    VOIDABLE TRANSFERS

· If any of the payments of money or transfers of property made to CRB, by any of Global or Guarantor in payment of indebtedness or otherwise should for any reason be declared to be fraudulent within the meaning of any state or federal law relating to fraudulent conveyances or preferential transfers, or otherwise become voidable or recoverable under the Bankruptcy Code or any other federal or state law, in whole or in part, for any reason (hereinafter collectively called "Voidable Transfers"), and CRB is required to repay or restore any such Voidable Transfers, or any portion thereof, then, as to any such Voidable Transfer or the amount repaid or restored (including all costs, expenses, and attorney's fees of CRB related thereto), the liability of Guarantor shall automatically be revived, reinstated, and restored as though such Voidable Transfer had never been made to CRB.  Nothing herein is an admission by any party that any such Voidable Transfer has occurred and all parties believe that no such Voidable Transfer exists or will occur.

7.    NO INQUIRY BY CRB

It is not necessary for CRB to inquire into the powers of Global or the officers, directors, partners, or agents acting or purporting to act in Global's behalf, and any indebtedness or obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

- 2 -

8.    REPRESENTATIONS AND WARRANTIES OF GUARANTOR

Guarantor hereby represents and warrants to CRB that Guarantor is an individual residing in the State of Connecticut, and has the full capacity and authority to execute, deliver and perform the terms of this Guaranty, and that this Guaranty has been duly executed and delivered by Guarantor, and constitutes a valid and binding obligation of Guarantor enforceable in accordance with its respective terms.

9.    MISCELLANEOUS

9.1    Additional Actions and Documents

Guarantor hereby agrees to take or cause to be taken such further actions, to execute, deliver and file or cause to be executed, delivered and filed such further documents, and to obtain such consents, as may be necessary or as may be reasonably requested in order to fully effectuate the purposes, terms and conditions of this Agreement.

9.2    Amendment

No amendment, modification or discharge of this Guaranty shall be valid or binding unless set forth in writing and duly executed and delivered by the party against whom enforcement of the amendment, modification, or discharge is sought.

9.3    Assignment

Guarantor shall not assign Guarantor's rights and obligations under this Agreement, in whole or in part, whether by operation of law or otherwise, without the prior written consent of CRB, and any such assignment contrary to the terms hereof shall be null and void and of no force and effect.

9.4.    Binding Effect

Subject to the provisions hereof restricting assignment, this Guaranty shall be binding Guarantor and Guarantor's heirs, executors, administrators, legal representatives and permitted assigns.

9.5    Waiver

No delay or failure on the part of CRB in exercising any right, power or privilege under this Guaranty shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein.

- 3 -

FINAL Massie Personal Guaranty (5).DOC

9.7.    Severability

If any part of any provision of this Guaranty or any other agreement or document given pursuant to or in connection with this Guaranty shall be invalid or unenforceable in any respect, such part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of such provision or the remaining provisions of this Guaranty.

9.8.    Governing Law

This Guaranty and any claims or disputes relating thereto shall be governed by and construed in accordance with the laws of the District of Columbia (excluding the choice of law rules thereof).

9.9.    Consent to Jurisdiction

This Agreement and the duties and obligations of the parties hereunder and under each of the documents referred to herein shall be enforceable in the courts of the United States of America and of the District of Columbia or the state of Connecticut. For such purpose, each of the parties hereby submit to the non-exclusive jurisdiction of such courts, and agrees that all claims in respect of this Guaranty and such other documents may be heard and determined in any of such courts. Each of the parties hereby agrees that a final judgment of any of the courts specified above in any action or proceeding relating to this Guaranty shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Provided, however, that in any dispute regarding payment of fees, GNCI may elect to resolve the matter through arbitration, which shall be binding on the parties, under the rules of the American Arbitration Association If Global so elects, the extent of guarantor's liability if any shall also be determined in arbitration.

IN WITNESS WHEREOF, the undersigned has duly executed this Guaranty as of the date first hereinabove set forth.

Date: 12/14/04                    RONALD E. MASSIE

- 4 -

FINAL Massie Personal Guaranty (5)

# EXHIBIT D

Dec-06-06  16:57    From-LEVY DAVIS MAHER              +12123710463    T-814  P.02/03  F-980

DEC-01-2006  16:13    FROM-COLE, RAYWID & BRAVERMAN, L.L.P.    202-4620087    T-004  P.003/005  F-738

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE

WHEREAS, Plaintiff, COUNSEL PRESS, LLC, hereinafter referred to as "Plaintiff," has filed a Summons against COLE, RAYWID, & BRAVERMAN, L.L.P. hereinafter referred to as "Defendant," in the Civil Court Of The City Of New York, County Of New York, Summons Index No. 049928, filed Aubust 16, 2006.

NOW THEREFORE, Plaintiff and Defendant have agreed to fully and completely settle the above referenced litigation, and hereby agree as follows:

1. Without any admission of liability, Defendant will pay to Plaintiff the full sum of six thousand dollars ($6,000.00) within five business days upon the execution of this Settlement Agreement, payment to be made payable to LEVY DAVIS & MAHER, as attorneys.

2. For the sole consideration of the payment of $6,000.00, from Defendant to Plaintiff, and the dismissal with prejudice of the Summons, as provided herein, Plaintiff, hereby releases Defendant and Defendant hereby releases Plaintiff, and each of the released parties' predecessors and successors in interest, heirs, assigns, past, present and future officers, directors, shareholders, agents, employees, managers, representatives, attorneys, accountants, advisors, owners, partners, shareholders, trustees, parent and subsidiary organizations, and affiliates from any and all liabilities, actions, causes of action, injuries, rights, judgments, losses, suits, debts, dues, sums of money, accounts, bonds, executions, costs, attorney's fees, fines, penalties claims and/or demands, whether fixed or contingent, known or unknown and/or of any kind and/or nature whatsoever, which either Plaintiff, Defendant, or Third-Party Defendant ever had, now has or may have, specifically limited to any and all claims which were and/or could have been asserted in the settled litigation.3. This settlement agreement and release shall be binding upon and inure to the benefit of Plaintiff, Defendant, and their respective heirs, executors, administrators, successors, assigns and legal representatives and is not subject to any condition not expressly set forth herein.

3. This settlement agreement and release constitutes the entire understanding and agreement of the parties and no modification, amendment or revision hereof shall be of any force or effect unless in writing and duly executed by the parties or their authorized representatives.

4. Upon receipt of Defendant's full and complete payment of the amount of $6,000.00 and the signed Agreement herein, the attorneys for Plaintiff will forward to the attorney for the Defendant a fully executed Agreement, and file the dismiss the case with prejudice.

5. This Settlement Agreement is the result of good faith negotiations and compromise. The agreements and releases contained in this Settlement Agreement effect the settlement of claims which are denied and contested, and nothing set forth herein shall be construed as an admission by any Party hereto of any liability of any kind to the other, or to any other person, corporation or any other type of entity. This Settlement Agreement is executed solely as a compromise to avoid the expense of litigation.

6. Each Party represents that it has executed and entered into this Settlement Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties, or promises other than those set forth in this Settlement Agreement were made by any Party or any employee, agent or legal counsel of any Party to induce said Party to execute this Settlement Agreement.

7. The Parties hereto have had the opportunity to be represented by counsel in their negotiations of the terms of this Settlement Agreement, and therefore no provision of this Settlement Agreement shall be construed against any Party hereto on the theory that such Party drafted such provision.

Dec-06-06  16:57    From-LEVY DAVIS MAHER                    +12123710463        T-814   P.03/03   F-980

DEC-06-2006  16:13    FROM-COLE, RAYWID & BRAVERMAN, L.L.P.      202-4520087         T-004   P.004/006   F-739

8.  This Settlement Agreement may be executed simultaneously in any number of counterparts, and sent by facsimile to the other party, each of which when so executed and delivered shall be taken to be an original, but such counterparts shall together constitute but one and the same document.

9.  Each signatory below represents that it has the requisite power, authority and legal capacity to make, execute, enter into and deliver this Settlement Agreement and to fully perform its duties and obligations under this Settlement Agreement.

Dated: _Dec 1_____, 2006

**COLE, RAYWID & BRAVERMAN, L.L.P.**

Robert G. Scott, Jr., Partner
Cole, Raywid & Braverman, L.L.P.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006-9750
Telephone:  202-659-9750
Facsimile:  202-452-0067

**COUNSEL PRESS, LLC**

BY: _____

Damon R. Maher
Levy Davis & Maher
880 Third Avenue, Ninth Floor
New York, NY  10022

**As Attorney In Fact For Plaintiff
Counsel Press, LLC**

DEC-06-2006  12:53        +12123710463                    96%

# EXHIBIT E

**Scott, Robert**

| | |
|---|---|
| **From:** | Ronald Massie [ronmassie@publicpayphone.com] |
| **Sent:** | Wednesday, June 15, 2005 8:17 AM |
| **To:** | Bob Scott |
| **Subject:** | FW: bscott |

---

**From:** Jason LaPorte [mailto:JLAPORTE@publicpayphone.com]
**Sent:** Wednesday, June 15, 2005 8:08 AM
**To:** 'Ronald Massie'
**Subject:** bscott


                                                            June 15, 2005


**Cole Raywid & Braverman L.L.P.**
1919 Pennsylvania Ave. NW
Washington, D.C. 20006
Att: Bob Scott

Bob let this serve as a letter of understanding between us. After our discussions you are aware my sentencing will occur on June 24th, 2005. At that point all of my assets are not encumbered any more. Within 30 days of June 24th we will update agreed upon fees as usual and handle things going forward. I appreciate the dedication you have given my case. Hopefully we will win the next round. Speak to you later in the day. Thank you and your committee.

Sincerely,

Ronald. E. Massie

# EXHIBIT F

**Scott, Robert**

| | |
|---|---|
| **From:** | Ronald E. Massie [RonMassie@PublicPayphone.com] |
| **Sent:** | Wednesday, July 05, 2006 1:09 PM |
| **To:** | Sabine Curto |
| **Cc:** | Bob Scott |
| **Subject:** | RE: |

**I did and hope you did also.Before you arrive tomorrow my outline will be there.Thank you for your consideration.Ron Massie**

---

**From:** Sabine Curto [mailto:SCurto@crblaw.com]
**Sent:** Wednesday, July 05, 2006 12:11 PM
**To:** Ronald E. Massie
**Cc:** Bob Scott
**Subject:** RE:

Hello Ron:
Hope you had a nice 4th. I thought I'd follow up w/you to see when you will be forwarding your written outline of how you will be paying off Global's debt, as mentioned in our call last Friday.
Regards,
Sabine

---

**From:** Ronald E. Massie [mailto:RonMassie@PublicPayphone.com]
**Sent:** Friday, June 30, 2006 9:58 AM
**To:** Sabine Curto
**Subject:**

**Please call 646 773 4400**

```
************************************************************
This electronic mail transmission may contain confidential or privileged
information. If you believe that you have received the message in error,
please notify the sender by reply transmission and delete the message
without copying or disclosing it.
************************************************************
```

# EXHIBIT G

**Scott, Robert**

| | |
|---|---|
| **From:** | Ronald E. Massie [RonMassie@PublicPayphone.com] |
| **Sent:** | Thursday, July 06, 2006 6:41 AM |
| **To:** | Sabine Curto |
| **Cc:** | Bob Scott |
| **Subject:** | Invoices |

**Ms. Curto, On September 8,2006 we can make a $75,000.00 payment.We have 3 acquisitions closing August 30.At that point Bob and I will discuss and agree upon balance due.That amount will be paid in three equal payments,Oct….Nov…and Dec.Thank you.Ronald Massie**

# EXHIBIT H

**Scott, Robert**

| | |
|---|---|
| **From:** | Scott, Robert |
| **Sent:** | Thursday, September 13, 2007 1:51 PM |
| **To:** | Ron Massie; Ron Massie |
| **Subject:** | Global Bill Arbitration? |

Ron,

I tried calling this morning and left a voice message.

I could not be more unhappy about where things stand on the outstanding bill Global Networks owes us.

It seems that, despite our discussions this summer, we are not going to resolve the outstanding bill that Global owes my law firm for services through direct discussions. Although I have asked you several times to put in writing the details of your recent offer to settle the fees for $150,000, you have not provided any concrete payment amounts or dates. I wish that were not true, but you have given us nothing to counter or accept.

We are willing to go to arbitration with Global if you prefer that forum to litigation. It seems we are in agreement that the firm did the work, was successful in keeping Global's business alive for several years, and that the only disagreement is over the proper fees. You have said we billed too much, and claim I agreed that the fees were too high. We of course disagree, and think Global received great legal work at very fair prices which it has not paid.

Perhaps binding arbitration would be the easiest way to resolve the dispute, given that we only disagree on what is owed. Please advise me immediately if you choose binding arbitration for Global per your fee agreement. If you are too busy to respond to me in writing, as frequently has been the case, we will conclude that binding arbitration is not acceptable to you.

Please respond by Friday September 21.

Thank you and good luck with everything.

**Bob Scott** | Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 200 | Washington, DC 20006
Tel: (202) 973-4265 | Fax: (202) 973-4465
Email: bobscott@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.